**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BLUE SPIKE LLC; BLUE SPIKE INTERNATIONAL LTD.; WISTARIA TRADING LTD.,<br><br>                Plaintiffs,<br><br>   v.<br><br>MEDIACOM COMMUNICATIONS CORPORATION and MEDIACOM BROADBAND LLC,<br><br>              Defendants. | **Civil Action No. 1:20-cv-06600-RPP** |

**MEDIACOM'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT
AND COUNTERCLAIMS**

Pursuant to the Court's Order (D.I. 8), Defendants Mediacom Communications

Corporation and Mediacom Broadband LLC (collectively, "Mediacom") hereby answer

Plaintiffs' November 6, 2020, Complaint.

## NATURE OF THE ACTION

1.　　This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

**ANSWER:** Admitted that Plaintiffs have brought an action for alleged patent

infringement under the Patent Laws. Mediacom denies any remaining allegations of this

paragraph.

## THE PARTIES

2.　　Plaintiff Blue Spike LLC is a limited liability company organized under the laws of the State of Texas.

**ANSWER:** Mediacom lacks knowledge sufficient to form a belief as to the allegations

of this paragraph, and therefore denies them.

3.     Plaintiff Blue Spike Int. is a limited liability company established in Ireland with a place of business at Unit 6, Bond House, Bridge Street, Dublin 8. Blue Spike Int. was recently acquired by Blue Spike Inc., a Florida corporation.

**ANSWER:**     Mediacom lacks knowledge sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

4.     Plaintiff Wistaria Trading Ltd. is a Bermuda corporation with a place of business at Clarendon House, 2 Church St., Hamilton HM 11, Bermuda.

**ANSWER:**     Mediacom lacks knowledge sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

5.     Collectively, all substantive rights to the patents in suit reside with the Plaintiffs, including the rights to grant sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

**ANSWER:**     Mediacom lacks knowledge sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

6.     On information and belief, Defendant Mediacom Communications Corp. is a Delaware limited liability company with its principal place of business located at 100 Crystal Run Road, Middletown, New York 10941.

**ANSWER:**     Mediacom Communications Corp. is a corporation organized under the laws of Delaware, with a place of business at 100 Crystal Run Road, Middletown, NY 10941. Mediacom denies the remaining allegations of this paragraph.

7.     On information and belief, Defendant Mediacom Broadband LLC is a Delaware limited liability company with its principal place of business located at 100 Crystal Run Road, Middletown, New York 10941.

**ANSWER:**     Mediacom Broadband LLC is a limited liability company organized under the laws of Delaware, with a place of business at 100 Crystal Run Road, Middletown, NY 10941. Mediacom denies the remaining allegations of this paragraph.

8.     On information and belief, Defendants have a place of business at 808 E. North St. Elburn, IL, 60119.

**ANSWER:**     Admitted.

9.     On information and belief, Mediacom sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

**ANSWER:**     Admitted that Mediacom offers certain services within certain portions of

this District.  Mediacom denies the remaining allegations of this paragraph.

10.     On information and belief, Mediacom designs, develops, manufactures, sells, offers to sell, and/or imports products, devices, systems, and/or components of systems through certain accused instrumentalities (as discussed further below) that either infringe or support the infringement of the patents asserted in this action.

**ANSWER:**     Denied.

11.     Plaintiffs seek monetary damages and prejudgment interest for Mediacom's past and ongoing direct and indirect infringement of the Patents in suit.

**ANSWER:**     Admitted that Plaintiffs seek damages.  Mediacom denies that Plaintiffs

are entitled to any damages and denies that it infringes any valid and enforceable claim of any

Patent-in-Suit.

## JURISDICTION AND VENUE

12.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

**ANSWER:**     Admitted that Plaintiffs have brought an action for alleged patent

infringement under the Patent Laws.

13.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**     Admitted.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

**ANSWER:**     Admitted for purposes of this action.

15.     This Court has personal jurisdiction over Mediacom under the laws of the State of Illinois and this judicial District, due at least to its substantial business in Illinois and this judicial District, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals

in the State of Illinois. Venue is also proper in this district because Mediacom has a regular and established place of business in this District. For instance, Mediacom has offices and customer care representatives in this judicial District. For example, Mediacom has offices in this District located at 808 E. North St. Elburn, IL, 60119, employs persons within the State of Illinois and this District (*See, e.g.,* https://phe.tbe.taleo.net/phe01/ats/careers/v2/viewRequisition?org=MEDIACOMCC&cws=46&rid=14733 (Mediacom seeking a "Business Account Executive" in Elburn, IL) (last visited Nov. 2, 2020)), and advertises and conducts business within the State of Illinois and this District (*See, e.g.,* https://www.mediacombundledeals.com/Elburn-Illinois.html (last visited Nov. 2, 2020)).

> **ANSWER:** Admitted that this Court has personal jurisdiction over Mediacom for purposes of this action only. Admitted that Mediacom has an office at the Elburn address identified in this paragraph. This paragraph also contains legal conclusions as to which no response is required. The cited URLs are not operational. Mediacom denies the remaining allegations of this paragraph, including denial that the cited URLs support Plaintiffs' allegations.

16. Defendants are additionally subject to this Court's general and specific personal jurisdiction because Defendants have sufficient minimum contacts within the State of Illinois and this district, pursuant to due process and/or the Illinois Long Arm Statute, 735 ILCS § 5/2-209. On information and belief, Defendants transact business in the State of Illinois and this district; Defendants committed the tort of patent infringement in the State of Illinois and this district; Defendants own, use, and/or possess real estate in the State of Illinois and this district, including at least at 808 E. North St. Elburn, IL, 60119; Plaintiffs' causes of action arise directly from Defendants' business contacts and other activities in the State of Illinois and this district; and Defendants distribute, make available, import, sell and offer to sell products and services throughout the United States, including in this judicial district, and introduced infringing products and services into the stream of commerce knowing that they would be used and sold in this judicial district and elsewhere in the United States.

> **ANSWER:** Admitted that this Court has personal jurisdiction over Mediacom for purposes of this action only. Admitted that Mediacom has an office at the Elburn address identified in this paragraph. This paragraph also contains legal conclusions as to which no response is required. Mediacom denies the remaining allegations of this paragraph.

17. Furthermore, personal jurisdiction over Mediacom in this action comports with due process. Mediacom has conducted and regularly conducts business within the United States and this District. Mediacom has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in the State of Illinois and this District. Mediacom has sought protection and benefit from the laws of the State of Illinois by making available products and services through accused instrumentalities that infringe the Patents in suit

with the awareness and/or intent that they will be used (or visited) by consumers in this District. Having purposefully availed itself of the privilege of conducting business within this District, Mediacom should reasonably and fairly anticipate being brought into court here.

**ANSWER:** Admitted that this Court has personal jurisdiction over Mediacom for purposes of this action only. This paragraph also contains legal conclusions as to which no response is required. Mediacom denies the remaining allegations of this paragraph.

## BACKGROUND

### The Invention

18. Scott A. Moskowitz is the inventor of U.S. Patent Reissue No. 44,222 ("the '222 patent"). A true and correct copy of the '222 patent is attached as Exhibit A.

**ANSWER:** Admitted that Scott Moskowitz is listed as an inventor on the face of the '222 patent, and that Plaintiffs attached what appears to be a copy of the '222 patent as Exhibit A to its Complaint. Mediacom denies any remaining allegations of this paragraph.

19. Scott A. Moskowitz is the inventor of U.S. Patent Reissue No. RE 44,307 ("the '307 patent"). A true and correct copy of the '307 patent is attached as Exhibit B.

**ANSWER:** Admitted that Scott Moskowitz is listed as an inventor on the face of the '307 patent, and that Plaintiffs attached what appears to be a copy of the '307 patent as Exhibit B to its Complaint. Mediacom denies any remaining allegations of this paragraph.

20. Scott A. Moskowitz is the inventor of U.S. Patent No. 8,473,746 ("the '746 patent"). A true and correct copy of the '746 patent is attached as Exhibit C.

**ANSWER:** Admitted that Scott Moskowitz is listed as an inventor on the face of the '746 patent, and that Plaintiffs attached what appears to be a copy of the '746 patent as Exhibit C to its Complaint. Mediacom denies any remaining allegations of this paragraph.

21.     Scott A. Moskowitz is the inventor of U.S. Patent No. 8,224,705 ("the '705 patent"). A true and correct copy of the '705 patent is attached as Exhibit D.

**ANSWER:**     Admitted that Scott Moskowitz is listed as an inventor on the face of the '705 patent, and that Plaintiffs attached what appears to be a copy of the '705 patent as Exhibit D to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

22.     Scott A. Moskowitz is the inventor of U.S. Patent No. 7,287,275 B2 ("the '275 patent") (collectively, with the '222 patent, the '307 patent, the '746 patent, and the '705 patent (the "Packet Transfer patents").  A true and correct copy of the '275 patent is attached as Exhibit E.

**ANSWER:**     Admitted that Scott Moskowitz is listed as an inventor on the face of the '275 patent, and that Plaintiffs attached what appears to be a copy of the '275 patent as Exhibit E to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

23.     Scott A. Moskowitz and Marc Cooperman are the inventors of U.S. Patent No. 9,021,602 ("the '602 patent"). A true and correct copy of the '602 patent is attached as Exhibit F.

**ANSWER:**     Admitted that Plaintiffs have asserted to the Patent & Trademark Office that Scott Moskowitz and Marc Cooperman are the inventors of the '602 patent, and that Plaintiffs attached what appears to be a copy of the '602 patent as Exhibit F to its Complaint. Mediacom denies any remaining allegations of this paragraph.

24.     On March 24, 2018, the '602 patent expired.

**ANSWER:**     Admitted, on information and belief.

25.     Scott A. Moskowitz is the inventor of U.S. Patent No. 9,104,842 ("the '842 patent") (collectively, with the '602 patent, the "Watermarking patents"). A true and correct copy of the '842 patent is attached as Exhibit G.

**ANSWER:**     Denied that, according to Plaintiffs, Scott Moskowitz is the inventor of the '842 patent.  Plaintiffs have asserted a different inventive entity to the Patent & Trademark Office.  Admitted that Plaintiffs attached what appears to be a copy of the '842 patent as Exhibit G to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

26.     Scott A. Moskowitz and Michael Berry are the inventors of U.S. Patent No. 8,739,295 ("the '295 patent"). A true and correct copy of the '295 patent is attached as Exhibit H.

**ANSWER:**     Admitted that Scott Moskowitz and Mike Berry are listed as inventors on the face of the '295 patent, and that Plaintiffs attached what appears to be a copy of the '295 patent as Exhibit H to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

27.     On August 4, 2020, the '295 patent expired.

**ANSWER:**     Admitted, on information and belief.

28.     Scott A. Moskowitz and Michael Berry are the inventors of U.S. Patent No. 7,475,246 ("the '246 patent") (collectively, with the '295 patent, the "Secure Server patents"). A true and correct copy of the '246 patent is attached as Exhibit I.

**ANSWER:**     Admitted that Scott Moskowitz and Mike Berry are listed as inventors on the face of the '246 patent, and that Plaintiffs attached what appears to be a copy of the '246 patent as Exhibit I to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

29.     Scott A. Moskowitz is the inventor of U.S. Patent No. 7,159,116 ("the '116 patent"). A true and correct copy of the '116 patent is attached as Exhibit J.

**ANSWER:**     Admitted that Scott Moskowitz is listed as an inventor on the face of the '116 patent, and that Plaintiffs attached what appears to be a copy of the '116 patent as Exhibit J to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

30.     Scott A. Moskowitz is the inventor of U.S. Patent No. 8,538,011 ("the '011 patent") (collectively, with the '116 patent, the "Trusted Transaction patents"). A true and correct copy of the '011 patent is attached as Exhibit K.

**ANSWER:**     Admitted that Scott Moskowitz is listed as an inventor on the face of the '011 patent, and that Plaintiffs attached what appears to be a copy of the '011 patent as Exhibit K to its Complaint.  Mediacom denies any remaining allegations of this paragraph.

31.     The '222 patent, the '307 patent, '746 patent, the '705 patent, the '275 patent, the "602 patent, the '842 patent, the '295 patent, the '246 patent, the '116 patent, and the '011 patent (collectively, "the patents in suit") all cover pioneering technologies for rights management and content security.

**ANSWER:**     Denied.

32.     The Packet Transfer patents resulted from the pioneering efforts of Mr. Moscowitz (hereinafter "the Inventor") in the area of rights management and content security in the early to mid-2000's. At the time of Mr. Moskowitz's innovations in this area, the most widely implemented technology used to optimize and provision the allocation of bandwidth. In that type of system, the most widely implanted technology used to optimize and provision the allocation of bandwidth. The Inventor conceived of the inventions claimed in the Packet Transfer patents as a way to focus on the priority of transmission paths for data in an attempt to alleviate bottlenecks of information within a given network.

**ANSWER:**     Portions of this paragraph are unintelligible ("At the time of Mr.

Moskowitz's innovations in this area, the most widely implemented technology used to optimize

and provision the allocation of bandwidth. In that type of system, the most widely implanted

technology used to optimize and provision the allocation of bandwidth.").  Mediacom denies the

remaining allegations of this paragraph.

33.     For example, the Inventor developed inventions claimed in the Packet Transfer as a way to transmit a stream of data by receiving a stream, organizing the stream into a plurality of packets, generating a watermark with each of the plurality of packets to form watermarked packets, and transmitting at least one of the watermarked packets across a network. *See* Exhibit A (the '222 patent at 5:11-6:9); Exhibit B (the '307 patent at 4:47-5:11); Exhibit C (the '746 patent at 3:51-4:66); Exhibit D (the '705 patent at 4:34-65); and Exhibit E (the '275 patent at 5:35-67).

**ANSWER:**     Denied.

34.     The Watermarking patents resulted from the pioneering efforts of the Inventors Scott Moskowitz and Marc Cooperman ("Cooperman") in the area of protection of digital information. These efforts resulted in the development of systems, methods, and devices for data protection memorialized in the mid-2000s. At the time of these pioneering efforts, the most widely implemented technology used to address the difficulty of protecting intellectual property was copy protection. However, in that type of system the cost of developing such protection was not justified considering the level of piracy that occurred despite the copy protection. The Inventor and Cooperman conceived of the inventions claimed in the Watermarking patents as a way to combine transfer functions with predetermined key creation.

**ANSWER:**     Denied.

35. For example, the Inventor and Cooperman developed systems and methods that protect digital information by identifying and encoding a portion of the format information. Encoded digital information, including the digital sample and the encoded format information, is generated to protect the original digital information.

**ANSWER:** Denied.

36. The Secure Server patents all resulted from the pioneering efforts of the named inventors in the area of secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security These efforts resulted in the secure personal content server memorialized in mid-2000. At the time of these pioneering efforts, the most widely implemented technology used to address unauthorized copying and distribution of digital content was focused solely on cryptography. Content could be encrypted, but there was no association between the encryption and the actual content. This meant that there could be no efficient and openly accessible market for tradable information. The Inventors conceived of the inventions claimed in the Secure Server patents as a way to separate transactions from authentication in the sale of digitized data.

**ANSWER:** Denied.

37. For example, the Inventors developed methods and systems which enable secure, paid exchange of value-added information, while separating transaction protocols. The methods and systems improve on existing means for distribution control by relying on authentication, verification and authorization that may be flexibly determined by both buyers and sellers. These determinations may not need to be predetermined, although pricing matrix and variable access to the information opens additional advantages over the prior art. The present inventions offers methods and protocols for ensuring value-added information distribution can be used to facilitate trust in a large or relatively anonymous marketplace (such as the Internet's World Wide Web).

**ANSWER:** Denied.

38. The Trusted Transaction patents resulted from the pioneering efforts of the Inventor in the area of transferring information between parties. These efforts resulted in the development of systems, methods, and devices for trusted transactions memorialized in the mid-2000s. At the time of these pioneering efforts, reciprocal and non-reciprocal systems could use non-secret algorithms to provide encryption and decryption. The Inventor conceived of the inventions claimed in the Trusted Transaction patents as a way to enhance trust on the part of participants in the transaction.

**ANSWER:** Denied.

39. For example, the Inventor developed methods and systems which enhance trust in transactions in connection with sophisticated security, scrambling, and encryption technology by,

for example, steganographic encryption, authentication, and security means. *See* Exhibit J ('116 patent at 3:36-4:11) and Exhibit K ('011 patent at 3:40-4:12).

   **ANSWER:**   Denied.

   **[Alleged] Advantage Over the Prior Art**

   40.   The patented inventions disclosed in the Packet Transfer patents provides many advantages over the prior art, and in particular improved the operations of systems, methods, and devices for transmitting a stream of data across a network. *See* '222 patent at 4:45-55; the '307 patent at 4:47-5:11; the '746 patent at 3:51-4:66; the '275 patent at Abstract; and the '705 patent at 4:34-65. One advantage of the patented inventions is that by associating the identity and authentication information of the packets, the patented inventions can more efficiently apportion bandwidth. *See* '222 patent at 7:40-50; the '307 patent at 7:42-48; the '746 patent at 7:42-48; the '275 patent at 10:62-11:6; and the '705 patent at 3:32-37.

   **ANSWER:**   Denied.

   41.   Another advantage of the patented inventions in the Packet Transfer patents is that a network may check and verify efficient bandwidth delivery on a packet lever and storing information concerning better paths between senders and receivers of these packets, thereby permitting optimized "flows" of information. *See* '222 patent at 7:65-8:5; the '307 patent at 8:23-27; the '746 patent at 8:19-24; the '275 patent at 7:60-65; and the '705 patent at 8:9-14.

   **ANSWER:**   Denied.

   42.   Yet another advantage of the patented inventions in the Packet Transfer patents is adding another novel layer of identity of the packet and subsequent provisioning by means of authenticating packets by means of authenticating packets along a particular path "flow". *See* '222 patent at 8:53-58; the '307 patent at 8:23-27; the '746 patent at 8:19-24; the '275 patent at 8:45-50; and the '705 patent at 8:9-14.

   **ANSWER:**   Denied.

   43.   Because of these significant advantages that can be achieved through the use of the patented inventions, the Packet Transfer patents present significant commercial value for companies like Defendants. Indeed, higher economic value can be attributed to a given television, internet, or phone service provider because of the increased optimization and provision of the allocation of bandwidth, which increases the security and speed of the transmission of the packeted data/information.

   **ANSWER:**   Denied.

   44.   The patented inventions disclosed in the Watermarking patents provide many advantages over the prior art, and in particular improved the operations of digital content generation and/or display devices. *E.g.*, Exhibit F, '602 patent at 7:22–40; Exhibit G, '842 patent at 7:20–38. One advantage of the patented inventions is the provision of a level of security for

executable code on similar grounds as that which can be provided for digitized samples. *E.g.*, Exhibit F, '602 patent at 7:22–29; Exhibit G, '842 patent at 7:20–27.

**ANSWER:** Denied.

45. Another advantage of the patented inventions is that they do not attempt to stop copying, but rather determine responsibility for a copy by ensuring that licensing information must be preserved in descendant copies from an original. Without the correct license information, the copy cannot function. *E.g.*, Exhibit F, '602 patent at 7:22–29; Exhibit G, '842 patent at 7:20–27.

**ANSWER:** Denied.

46. Because of the significant advantages that can be achieved through the use of the patented invention, Plaintiffs believe the Watermarking patents present significant commercial value for companies like Defendants. Indeed, the technology described and claimed in the Watermarking patents reads on the core security functionality of Defendants' digital security in its digital TV devices and products.

**ANSWER:** Denied.

47. The patented inventions disclosed in the Secure Server patents provide many advantages over the prior art, and in particular improved the operations of secure personal content servers. *E.g.*, Exhibit H, '295 patent at 2:39–65; Exhibit I, '246 patent at 2:24–64. One advantage of the patented inventions is the handling of authentication, verification, and authorization with a combination of cryptographic and steganographic protocols to achieve efficient, trusted, secure exchange of digital information. *E.g.*, Exhibit H, '295 patent at 1:27–30; Exhibit I, '246 patent at 1:53–56.

**ANSWER:** Denied.

48. Another advantage of the patented inventions is leveraging the benefits of digital information (such as media content) to consumers and publishers, while ensuring the development and persistence of trust between all parties. *E.g.*, Exhibit H, '295 patent at 3:32–47; Exhibit I, '246 patent at 3:16–30.

**ANSWER:** Denied.

49. Another advantage of the patented inventions is the separation and independent quantification of interests and requirements of different parties to a transaction by market participants in shorter periods of time. *E.g.*, Exhibit H, '295 patent at 3:47–67; Exhibit I, '246 patent at 3:32–51.

**ANSWER:** Denied.

50. Because of these significant advantages that can be achieved through the use of the patented invention, Plaintiffs believe the Secure Server patents present significant

commercial value for companies like Mediacom. Indeed, the technology described and claimed in the Secure Server patents read on the core functionality of Mediacom's product and services.

**ANSWER:** Denied.

51.     The patented inventions disclosed in the Trusted Transaction patents, provide many advantages over the prior art, and in particular improved the operations of transaction devices. *See* Exhibit J, '116 patent at 3:38-7:67; Exhibit K, '011 patent at 3:42-7:60. One advantage of the patented inventions is the handling of authentication, verification, and authorization with a combination of cryptographic and steganographic protocols to achieve efficient, trusted, secure exchange of digital information. *See* Exhibit J, '116 patent at 3:46-51; Exhibit K, '011 patent at 3:50-57.

**ANSWER:** Denied.

52.     Another advantage of the patented inventions in the Trusted Transaction patents is leveraging the benefits of digital information (such as media content) to consumers and publishers, while ensuring the development and persistence of trust between all parties. *See* Exhibit J, '116 patent at 3:16-30.

**ANSWER:** Denied.

53.     Another advantage of the patented inventions is the integration of system components, optimally requiring fewer processing resources so as to maximize usefulness and minimize cost. *See* Exhibit J, '116 patent at 3:52-55; Exhibit K, '011 patent at 3:53-57.

**ANSWER:** Denied.

54.     Because of these significant advantages that can be achieved through the use of the patented inventions, the Trusted Transaction patents present significant commercial value for companies like Defendants. Indeed, higher economic value can be attributed to a given television, internet, or phone service provider because of the security in transferring information between parties by steganographic, encryption, authentication, and security means, which increases the security of the transmission of the data/information.

**ANSWER:** Denied.

### [Alleged] Technological Innovation

55.     The patented inventions disclosed in the Packet Transfer patents resolve technical problems related to optimizing and provisioning the allocation of bandwidth, particularly related to the better handling of the competitive needs between networks and the concept of the Quality of Service ("QoS"). One of the limitations of the prior art regarding the protection of digital information was that users seek data objects which by their very structure of format may occupy large amounts of bandwidth, thereby creating bandwidth demand that has little to no relationship with how the data is valued by third parties, including owners of rights related to the objects. *See*

'222 patent at 2:60-67; '307 patent at 2:61-3:5; '746 patent at 2:56-67; and '705 patent at 2:48-59.

**ANSWER:** Denied.

56. The claims of the Packet Transfer patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the Packet Transfer patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to optimize and provision the allocation of bandwidth in a way that makes streaming economically viable.

**ANSWER:** Denied.

57. In addition, the claims of the Packet Transfer patents recite inventive concepts that improve the functioning of devices for packet watermarking and efficient provisioning of bandwidth.

**ANSWER:** Denied.

58. Moreover, the claims of the Packet Transfer patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented inventions disclosed in the Packet Transfer patents provide a new and novel solution to specific problems related to improving the optimizing and provisioning the allocation of bandwidth.

**ANSWER:** Denied.

59. The patented inventions disclosed in the Packet Transfer patents do not preempt all the ways that bandwidth may be allocated and/or optimized, nor do the Packet Transfer patents preempt any other well-known or prior art technology.

**ANSWER:** Denied.

60. Accordingly, the claims in the Packet Transfer patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**ANSWER:** Denied.

61. The patented inventions disclosed in the Watermarking patents resolve technical problems related to protection of digital information particularly problems related to a method and device for data protection. As the Watermarking patents explain, one of the limitations of the prior art as regards the protection of digital information was that existing methods of copy protection were too expensive and/or required outside determination and verification of the license. (*See* Exhibit F, '602 patent at 2:47–4:48; Exhibit G, '842 patent at 1:29–60.)

**ANSWER:** Denied.

62. The claims of the Watermarking patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the Watermarking patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of protecting digital information in a highly distributed computing environment.

**ANSWER:** Denied.

63. In addition, the claims of the Watermarking patents recite inventive concepts that improve the functioning of devices for protecting digital information, particularly by combining transfer functions with predetermined key creation.

**ANSWER:** Denied.

64. Moreover, the claims of the Watermarking patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented inventions disclosed in the Watermarking patents provide a new and novel solution to specific problems related to protecting digital information.

**ANSWER:** Denied.

65. The patented inventions disclosed in the Watermarking patents do not preempt all the ways that protecting digital information may be used to improve devices for data protection, nor do the Watermarking patents preempt any other well-known or prior art technology.

**ANSWER:** Denied.

66. Accordingly, the claims in the Watermarking patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**ANSWER:** Denied.

67. The patented inventions disclosed in the Secure Server patents resolve technical problems related to the secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security. As the Secure Server patents explain, one of the limitations of the prior art as regards the secure distribution of digitized value-add information or media content was that content could be encrypted, but there was no association between the encryption and the actual content. This meant that there could be no efficient and openly accessible market for tradable information that was securely distributable. (*See* Exhibit H, '295 patent at 1:22–26; Exhibit I, '246 patent at 1:48–56.)

**ANSWER:** Denied.

68.     The claims of the Secure Server patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the Secure Server patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.

**ANSWER:**     Denied.

69.     In addition, the claims of the Secure Server patents recite inventive concepts that improve the functioning of secure personal content servers, particularly varying quality levels in a manner designed to improve security.

**ANSWER:**     Denied.

70.     Moreover, the claims of the Secure Server patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented inventions disclosed in the Secure Server patents provide a new and novel solution to specific problems related to improving secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security.

**ANSWER:**     Denied.

71.     The patented inventions disclosed in the Secure Server patents do not preempt all the ways that secure distribution of digitized value-added information, or media content, while preserving the ability of publishers to make available unsecured versions of the same value-added information, or media content, without adverse effect to the systems security may be used to improve the personal content servers, nor do the Secure Server patents preempt any other well-known or prior art technology.

**ANSWER:**     Denied.

72.     Accordingly, the claims in the Secure Server patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**ANSWER:**     Denied.

73.     The patented inventions disclosed in the Trusted Transaction patents resolve technical problems related to transferring information between parties—particularly problems related to the utilization of sophisticated security, scrambling, and encryption technology by, for example, steganographic encryption, authentication, and security means. As the Trusted Transaction patents explain, one of the limitations of the prior art as regards the technical problems related to transferring information between parties was the difficulty of providing to a prospective acquirer of good or services full, accurate, and verifiable information regarding the

nature, value, authenticity, and other suitability-related characteristics of the product in question. In that type of system, reciprocal and non-reciprocal systems could use non-secret algorithms to provide encryption and decryption. (*See* Exhibit J, '116 patent at 2:53–3:35; Exhibit K, '011 patent at 2:57–3:38.)

**ANSWER:**    Denied.

74.    The claims of the Trusted Transaction patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the Trusted Transaction patents recite inventive concepts that are deeply rooted in engineering technology, and overcome problems specifically arising out of how to enhance trust on the part of participants in the transaction.

**ANSWER:**    Denied.

75.    In addition, the claims of the Trusted Transaction patents recite inventive concepts that improve the functioning of devices for conducting trusted transactions, particularly by creating a bridge between mathematically determinable security and analog or human measure of trust.

**ANSWER:**    Denied.

76.    Moreover, the claims of the Trusted Transaction patents recite inventive concepts that are not merely routine or conventional use of computer components. Instead, the patented inventions disclosed in the Packet Transfer patents provide new and novel solutions to specific problems related to enhancing trust on the part of participants in a transaction.

**ANSWER:**    Denied.

77.    The patented inventions disclosed in the Trusted Transaction patents do not preempt all the ways that enhancing trust on the part of participants in a transaction may be used or improve devices for the trusted transactions, nor do the Trusted Transaction patents preempt any other well-known or prior art technology.

**ANSWER:**    Denied.

78.    Accordingly, the claims in the Trusted Transaction patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**ANSWER:**    Denied.

<u>**Prior Litigation**</u>

79.     The '222 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:16-cv-00048, Case No. 6:16-cv-01020, Case No. 6:16-cv-01191, Case No. 6:16-cv-01384, Case No. 6:17-cv-00053, Case No. 6:17-cv-00016, Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No.5:17-cv-04780, Case No. 5:18-cv-03392, and the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00158.

**ANSWER:**     Admitted that Plaintiffs have previously asserted the '222 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

80.     The '307 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:16-cv-00048, Case No. 6:16-cv-01020, Case No. 6:16-cv-01191, Case No. 6:16-cv-01384, Case No. 6:17-cv-00053, Case No. 6:17-cv-00016, , Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No.5:17-cv-04780, Case No. 5:18-cv-03392, and the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00158.

**ANSWER:**     Admitted that Plaintiffs have previously asserted the '307 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

81.     The '746 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:16-cv-00048, Case No. 6:16-cv-01020, Case No. 6:16-cv-01191, Case No. 6:16-cv-01384, Case No. 6:17-cv-00053, Case No. 6:17-cv-00016, , Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No.5:17-cv-04780, Case No. 5:18-cv-03392, and the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00158.

**ANSWER:**     Admitted that Plaintiffs have previously asserted the '746 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

82.     The '275 patent was previously litigated in the Eastern District of Texas in Case No. 6:16-cv-00048, Case No. 6:16-cv-01020, Case No. 6:16-cv-01191, Case No. 6:16-cv-01384, Case No. 6:17-cv-00053, Case No. 6:17-cv-00016, , Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-

01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00158, and the Northern District of California in Case No. 5:17-cv-04780.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '275 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

83. The '705 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:16-cv-00048, Case No. 6:16-cv-01020, Case No. 6:16-cv-01191, Case No. 6:16-cv-01384, Case No. 6:17-cv-00053, Case No. 6:17-cv-00016, , Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, and the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00158.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '705 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

84. The '602 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:17-cv-00016, Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No. 5:18-cv-03392, the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00160, and the Patent Trial and Appeal Board, IPR2019-01449.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '602 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

85. The '842 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 6:17-cv-00016, Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No. 5:18-cv-03392, the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, and Case No. 1:19-cv-00160, and the Patent Trial and Appeal Board, IPR2019-01447.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '842 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

86. The '295 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 2:16-cv-00329, Case No. 6:17-cv-00053, Case No. 6:17-cv-00060, Case No. 6:17-cv-00063, Case No. 6:17-cv-00096, Case No. 6:17-cv-00097, Case No. 6:17-cv-00098, Case No. 6:17-cv-00099, Case No. 6:17-cv-00100, Case No.

6:17-cv-00101, Case No. 6:17-cv-00138, Case No. 6:18-cv-00174, Case No. 6:17-cv-00175, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No.5:17-cv-04780, Case No. 5:18-cv-03392, the Central District of California in Case No. 8:17-cv-01172, the District of Delaware in Case No. 1:17-cv-00928, Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, and Case No. 1:18-cv-00160, and the Patent Trial and Appeal Board, IPR2019-01303.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '295 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

87. The '246 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 4:20-cv-00722, Case No. 2:16-cv-00329, Case No. 6:17-cv-00053, Case No. 6:17-cv-00060, Case No. 6:17-cv-00063, Case No. 6:17-cv-00096, Case No. 6:17-cv-00097, Case No. 6:17-cv-00098, Case No. 6:17-cv-00099, Case No. 6:17-cv-00100, Case No. 6:17-cv-00101, Case No. 6:17-cv-00138, Case No. 6:18-cv-00174, Case No. 6:17-cv-00175, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, and Case No. 6:18-cv-00333, the Northern District of California in Case No.5:17-cv-04780, Case No. 5:18-cv-03392, the Central District of California in Case No. 8:17-cv-01172, the District of Delaware in Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, and Case No. 1:18-cv-00160, and the Patent Trial and Appeal Board, IPR2019-01357 and IPR2019-01358.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '246 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

88. The '116 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 6:16-cv-01384, Case No. 6:17-cv-00016, Case No. 6:17-cv-00053, Case No. 6:17-cv-00060, Case No. 6:17-cv-00063, , Case No. 6:17-cv-00096, Case No. 6:17-cv-00097, Case No. 6:17-cv-00098, Case No. 6:17-cv-00099, Case No. 6:17-cv-00100, Case No. 6:17-cv-00101, Case No. 6:18-cv-00174, Case No. 6:18-cv-00175, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, Case No. 6:18-cv-00333, Case No. 6:18-cv-00382, the Northern District of California in Case No.5:17-cv-04780 and Case No. 5:18-cv-03392, the Central District of California in Case No. 2:18-cv-03870, Case No. 2:18-cv-04525, Case No. 2:18-cv-05026, Case No. 2:18-cv-05396, Case No. 2:18-cv-05391, and Case No. 2:18-cv-01172, and the District of Delaware in Case No. 6:18-cv-00174, Case No. 1:17-cv-00928, Case No. 1:18-cv-01402, Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, Case No. 1:19-cv-00160, and Case No. 1:19-cv-00161.

**ANSWER:** Admitted that Plaintiffs have previously asserted the '116 patent in

litigation, and that this paragraph appears to list prior litigation involving the patent.

89.     The '011 patent was previously litigated in the Eastern District of Texas in Case No. 4:20-cv-671, Case No. 6:16-cv-01384, Case No. 6:17-cv-00016, Case No. 6:17-cv-00053, Case No. 6:17-cv-00060, Case No. 6:17-cv-00063, , Case No. 6:17-cv-00096, Case No. 6:17-cv-00097, Case No. 6:17-cv-00098, Case No. 6:17-cv-00099, Case No. 6:17-cv-00100, Case No. 6:17-cv-00101, Case No. 6:18-cv-00174, Case No. 6:18-cv-00181, Case No. 6:18-cv-00195, Case No. 6:18-cv-00223, Case No. 6:18-cv-00242, Case No. 6:18-cv-00333, Case No. 6:18-cv-00381, and Case No. 6:18-cv-00382, the Northern District of California in Case No.5:17-cv-04780 and Case No. 5:18-cv-03392, the Central District of California in Case No. 2:18-cv-03870, Case No. 2:18-cv-04525, Case No. 2:18-cv-05026, Case No. 2:18-cv-05396, Case No. 2:18-cv-05391, and Case No. 2:18-cv-01172, and the District of Delaware in Case No. 6:18-cv-00174, Case No. 1:17-cv-00928, Case No. 1:18-cv-01402, Case No. 1:18-cv-01406, Case No. 1:18-cv-01427, Case No. 1:18-cv-01512, Case No. 1:19-cv-00158, Case No. 1:19-cv-00159, Case No. 1:19-cv-00160, and Case No. 1:19-cv-00161 (collectively, with the '222 patent, the '307 patent, the '746 patent, the '705 patent, the '602 patent, the '842 patent, the '295 patent, and the '246 patent litigation histories, the "Prior Litigation").

**ANSWER:**     Admitted that Plaintiffs have previously asserted the '011 patent in litigation, and that this paragraph appears to list prior litigation involving the patent.

90.     The scope and construction of the claims of the patents in suit have been clarified by the Prior Litigation.

**ANSWER:**     Admitted that the Prior Litigation is relevant to the patents-in-suit.

Mediacom denies the remaining allegations of this paragraph.

## COUNT I – [ALLEGED] INFRINGEMENT OF U.S. PATENT RE44,222

91.     The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**     Mediacom incorporates herein its responses to the foregoing paragraphs.

92.     On May 14, 2013, the '222 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth."

**ANSWER:**     Admitted that the '222 patent was reissued on the date and with the title set forth in this paragraph. Mediacom denies any remaining allegations of this paragraph.

93.     Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '222 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**     Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

94.     On information and belief, Mediacom has and continues to directly infringe one or more claims of the '222 patent by selling, offering to sell, making, using, and/or providing and causing to be used products, specifically one or more Mediacom servers used to transmit a stream of data, including, for example, by providing Mediacom television or Internet access services (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:**     Denied.

95.     On information and belief, the Accused Instrumentalities perform a process for transmitting a stream of data, including internet traffic, video on demand traffic ("VOD"), and voice over IP ("VOIP") traffic over a network utilizing the DOCSIS 3.0 and/or DOCSIS 3.1 protocol, which necessarily infringes at least claim 1 of the '222 patent.

**ANSWER:**     Denied.

96.     Exemplary infringement analysis showing infringement of claim 1 of the '222 patent is set forth in Exhibit L (DOCSIS 3.0) and Exhibit M (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '222 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '222 patent.

**ANSWER:**     Denied.

97.     The Accused Instrumentalities have infringed and continue to infringe at least claim 1 of the '222 patent during the pendency of the '222 patent.

**ANSWER:**     Denied.

98.     Discovery is expected to uncover the full extent of Defendants' infringement of the '222 patent beyond the '222 Accused Instrumentalities already identified through public information.

**ANSWER:**     Denied.

99.     On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this

patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:**    Denied.

100.    On information and belief, since Defendants have had knowledge of the '222 patent, Defendants have induced and continue to induce the infringement of others at least claim 1 of the '222 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '222 patent.

**ANSWER:**    Denied.

101.    In particular, Defendants' acts of inducement include, *inter alia*: providing the '222 Accused Instrumentalities to its customers and other third parties and intending them to use the '222 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/ (providing "Shop TV Now" and "Call 800-479-2082" links to obtain products and Accused Instrumentalities); providing online support, an online portal, and training customers to use the '222 Accused Instrumentalities in an infringing way (*see, e.g.,* https://support.mediacomcable.com/#!/Log/In?redirect=Account.Dashboard-%7B%7D); providing a call/answer for support and training customers to use the '222 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '222 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '222 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**    Denied.

102.    On information and belief, at least since Defendants have had knowledge of the '222 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**    Denied.

103.    Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**    Denied.

**COUNT II – [ALLEGED] INFRINGEMENT OF U.S. PATENT RE44,307**

104. The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** Mediacom incorporates herein its responses to the foregoing paragraphs.

105. On June 18, 2013, the '307 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth."

**ANSWER:** Admitted that the '307 patent was reissued on the date and with the title

set forth in this paragraph. Mediacom denies any remaining allegations of this paragraph.

106. Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '307 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:** Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

107. On information and belief, Mediacom has and continues to directly infringe one or more claims of the '307 patent by selling, offering to sell, making, using, and/or providing and causing to be used products, specifically one or more Mediacom servers used to transmit a stream of data, including, for example, when Mediacom television or Internet access services are provided (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:** Denied.

108. On information and belief, the Accused Instrumentalities perform a process for transmitting a stream of data, including internet traffic, video on demand traffic ("VOD"), and voice over IP ("VOIP") traffic over a network utilizing the DOCSIS 3.0 and/or DOCSIS 3.1 protocol, which necessarily infringes at least claims 1, 6, 12, and 18 of the '307 patent.

**ANSWER:** Denied.

109. Exemplary infringement analysis showing infringement of claims 1, 6, 12, and 18 of the '307 patent is set forth in Exhibit N (DOCSIS 3.0) and Exhibit O (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '307 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '307 patent.

**ANSWER:** Denied.

110.    The Accused Instrumentalities have infringed and continue to infringe at least claims 1, 6, 12, and 18 of the '307 patent during the pendency of the '307 patent.

**ANSWER:**    Denied.

111.    Discovery is expected to uncover the full extent of Defendants' infringement of the '307 patent beyond the '307 Accused Instrumentalities already identified through public information.

**ANSWER:**    Denied.

112.    On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:**    Denied.

113.    On information and belief, since Defendants have had knowledge of the '307 patent, Defendants have induced and continue to induce the infringement of others at least claims 1, 6, 12, and 18 of the '307 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 6, 12, and 18 of the '307 patent.

**ANSWER:**    Denied.

114.    In particular, Defendants' acts of inducement included, *inter alia*: providing the '307 Accused Instrumentalities to its customers and other third parties and intending them to use the '307 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/ (providing "Shop TV Now" and "Call 800-479-2082" links to obtain products and Accused Instrumentalities)); providing online support, an online portal, and training customers to use the '307 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/; https://www.youtube.com/playlist?list=PLIRdBowguTJ4IKsN2aYqr2QTAJYlZ7s0a); providing a call/answer for support and training customers to use the '307 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '307 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '307 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**    Denied.

115.    On information and belief, at least since Defendants have had knowledge of the '307 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**    Denied.

116.    Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**    Denied.

## COUNT III – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,473,746

117.    The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**    Mediacom incorporates herein its responses to the foregoing paragraphs.

118.    On June 25, 2013, the '746 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth."

**ANSWER:**    Admitted that the '746 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

119.    Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '746 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**    Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

120.    On information and belief, Mediacom has and continues to directly infringe one or more claims of the '746 patent by selling, offering to sell, making, using, and/or providing and causing to be used products, specifically one or more Mediacom servers used to transmit a stream of data, including, for example, by providing Mediacom television or Internet access services (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:**    Denied.

121.    On information and belief, the Accused Instrumentalities perform a process for transmitting a stream of data, including internet traffic, video on demand traffic ("VOD"), and voice over IP ("VOIP") traffic over a network utilizing the DOCSIS 3.0 and/or DOCSIS 3.1 protocol, which necessarily infringes at least claims 9-10 and 12 of the '746 patent.

**ANSWER:**    Denied.

122.     Exemplary infringement analysis showing infringement of claims 9-10 and 12 of the '746 patent is set forth in Exhibit P (DOCSIS 3.0) and Exhibit Q (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '746 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '746 patent.

     **ANSWER:**     Denied.

123.     The Accused Instrumentalities have infringed and continue to infringe at least claims 9-10 and 12 of the '746 patent during the pendency of the '746 patent.

     **ANSWER:**     Denied.

124.     Discovery is expected to uncover the full extent of Defendants' infringement of the '746 patent beyond the '746 Accused Instrumentalities already identified through public information.

     **ANSWER:**     Denied.

125.     On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

     **ANSWER:**     Denied.

126.     On information and belief, since Defendants have had knowledge of the '746 patent, Defendants have induced and continues to induce the infringement of others at least claims 9-10 and 12 of the '746 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 9-10 and 12 of the '746 patent.

     **ANSWER:**     Denied.

127.     In particular, Defendants' acts of inducement include, *inter alia*: providing the '746 Accused Instrumentalities to its customers and other third parties and intending them to use the '746 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/ (providing "Shop TV Now" and "Call 800-479-2082" links to obtain products and Accused Instrumentalities)); providing online support, an online portal, and training customers to use the '746 Accused Instrumentalities in an infringing way (*see, e.g.,*

http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '746 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '746 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '746 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**   Denied.

128.   On information and belief, at least since Defendants had knowledge of the '746 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**   Denied.

129.   Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**   Denied.

## COUNT IV – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,287,275 B2

130.   The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**   Mediacom incorporates herein its responses to the foregoing paragraphs.

131.   On October 23, 2007, the '275 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth."

**ANSWER:**   Admitted that the '275 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

132.   Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '746 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**   Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

133.   On information and belief, Mediacom has and continues to directly infringe one or more claims of the '275 patent by selling, offering to sell, making, using, and/or providing and causing to be used products, specifically one or more Mediacom servers used to transmit a stream of data, including, for example, by providing Mediacom television or Internet access services (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:**   Denied.

134. On information and belief, the Accused Instrumentalities performs a process for transmitting a stream of data, including internet traffic, video on demand traffic ("VOD"), and voice over IP ("VOIP") traffic over a network utilizing the DOCSIS 3.0 and/or DOCSIS 3.1 protocol, which necessarily infringes at least claim 15 of the '275 patent.

**ANSWER:** Denied.

135. Exemplary infringement analysis showing infringement of claim 15 of the '275 patent is set forth in Exhibit R (DOCSIS 3.0) and Exhibit S (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '275 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '275 patent.

**ANSWER:** Denied.

136. The Accused Instrumentalities have infringed and continue to infringe at least claim 15 of the '275 patent during the pendency of the '275 patent.

**ANSWER:** Denied.

137. Discovery is expected to uncover the full extent of Defendants' infringement of the '275 patent beyond the '275 Accused Instrumentalities already identified through public information.

**ANSWER:** Denied.

138. On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:** Denied.

139. On information and belief, since Defendants have had knowledge of the '275 patent, Defendants have induced and continues to induce the infringement of others at least claim 15 of the '275 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 15 of the '275 patent.

**ANSWER:** Denied.

140. In particular, Defendants' acts of inducement include, *inter alia*: providing the '275 Accused Instrumentalities to its customers and other third parties and intending them to use

the '275 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/ (providing "Shop TV Now" and "Call 800-479-2082" links to obtain products and Accused Instrumentalities)); providing online support, an online portal, and training customers to use the '275 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '275 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '275 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '275 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**     Denied.

141.     On information and belief, at least since Defendants had knowledge of the '275 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**     Denied.

142.     Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**     Denied.

**COUNT V – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,224,705**

143.     The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**     Mediacom incorporates herein its responses to the foregoing paragraphs.

144.     On July 17, 2012, the '705 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Methods, Systems and Devices for Packet Watermarking and Efficient Provisioning of Bandwidth."

**ANSWER:**     Admitted that the '705 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

145.     Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '705 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**     Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

146.    On information and belief, Mediacom has and continues to directly infringe one or more claims of the '705 patent by selling, offering to sell, making, using, and/or providing and causing to be used products, specifically one or more Mediacom servers used to transmit a stream of data, including, for example, by providing Mediacom television or Internet access services including an electronic method for selling at least on item and/or service said method (for the purposes of this section, the "Accused Instrumentalities").

        **ANSWER:**     Denied.

147.    On information and belief, the Accused Instrumentalities performs a process for transmitting a stream of data, including internet traffic, video on demand traffic ("VOD"), and voice over IP ("VOIP") traffic over a network utilizing the DOCSIS 3.0 and/or DOCSIS 3.1 protocol, which necessarily infringes at least claim 8 of the '705 patent.

        **ANSWER:**     Denied.

148.    Exemplary infringement analysis showing infringement of claim 8 of the '705 patent is set forth in Exhibit T (DOCSIS 3.0) and Exhibit U (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '705 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '705 patent.

        **ANSWER:**     Denied.

149.    The Accused Instrumentalities have infringed and continue to infringe at least claim 8 of the '705 patent during the pendency of the '705 patent.

        **ANSWER:**     Denied.

150.    Discovery is expected to uncover the full extent of Defendants' infringement of the '705 patent beyond the '705 Accused Instrumentalities already identified through public information.

        **ANSWER:**     Denied.

151.    On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

        **ANSWER:**     Denied.

152.    On information and belief, since Defendants have had knowledge of the '705 patent, Defendants have induced and continues to induce the infringement of others at least claim

8 of the '705 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 8 of the '705 patent.

**ANSWER:** Denied.

153. In particular, Defendants' acts of inducement include, *inter alia*: providing the '705 Accused Instrumentalities to its customers and other third parties and intending them to use the '705 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/ (providing "Shop TV Now" and "Call 800-479-2082" links to obtain products and Accused Instrumentalities)); providing online support, an online portal, and training customers to use the '705 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '705 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '705 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '705 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:** Denied.

154. On information and belief, at least since Defendants have had knowledge of the '705 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:** Denied.

155. Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:** Denied.

## COUNT VI – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 9,021,602

156. The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:** Mediacom incorporates herein its responses to the foregoing paragraphs.

157. On April 28, 2015, the '602 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Data Protection Method and Device."

**ANSWER:** Admitted that the '602 patent was issued on the date and with the title set forth in this paragraph. Mediacom denies any remaining allegations of this paragraph.

158. Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '602 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:** Mediacom presently lacks information sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

159. On information and belief, Mediacom has directly infringed (by itself and jointly with its customers and partners) one or more claims of the '602 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically including but not limited to (1) TV boxes, modems, and gateways compatible with Mediacom cable, internet, and/or VOIP services (collectively, "STBs"); and (2) computers, software, and servers supporting the above (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:** Denied.

160. On information and belief, the Accused Instrumentalities infringed at least claims 1 and 8 of the '602 patent. The Accused Instrumentalities include a computer-based method for accessing functionality provided by an application software. Said computer-based method is found in the Accused Instrumentalities. For example, for Mediacom's STBs sold and/or leased by Mediacom, Mediacom conditioned the benefit of the receipt of its products and services upon requiring the STBs to be authenticated when connected to a TV or computer for the first time (i.e. a computer-based method for accessing functionality) in accordance with the DOCSIS 3.0 and/or DOCSIS 3.1 protocol.

**ANSWER:** Denied.

161. Exemplary infringement analysis showing infringement of claims 1 and 8 of the '602 patent is set forth in Exhibit V (DOCSIS 3.0) and Exhibit W (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '602 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '602 patent.

**ANSWER:** Denied.

162. The Accused Instrumentalities have infringed at least claims 1 and 8 of the '602 patent during the pendency of the '602 patent until at least March 24, 2018.

**ANSWER:** Denied.

163.     Discovery is expected to uncover the full extent of Defendants' infringement of the '602 patent beyond the '602 Accused Instrumentalities already identified through public information.

**ANSWER:**     Denied.

164.     To the extent any step of any claimed method of the '602 patent was performed by a customer or partner of Defendants, Defendants are liable for such infringement. Defendants conditioned the receipt of the benefits of their cable, internet, and/or VOIP services on the customer or partner's performance of the claimed method step and/or the infringing use of hardware or software, as further disclosed in Exhibit V and Exhibit W.

**ANSWER:**     Denied.

165.     On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:**     Denied.

166.     On information and belief, at least since Defendants have had knowledge of the '602 patent, Defendants' infringement has been willful.

**ANSWER:**     Denied.

167.     Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**     Denied.

## COUNT VII – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 9,104,842

168.     The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**     Mediacom incorporates herein its responses to the foregoing paragraphs.

169.     On August 11, 2015, the '842 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Data Protection Method and Device."

**ANSWER:**     Admitted that the '842 patent was issued on the date and with the title set forth in this paragraph. Mediacom denies any remaining allegations of this paragraph.

170. Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '842 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:** Mediacom presently lacks information sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

171. On information and belief, Mediacom has and continues to jointly and/or induce the directly infringe (by itself and jointly with its customers and partners) infringement of one or more claims of the '842 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically including but not limited to (1) and Mediacom's TV boxes, modems, and gateways compatible with Mediacom cable, internet, and/or VOIP services (collectively, "STBs"); and (2) computers, servers, and software supporting the above (for the purposes of this section, the "Accused Instrumentalities")

**ANSWER:** Denied.

172. On information and belief, the Accused Instrumentalities infringe at least claim 1 of the '842 patent. The Accused Instrumentalities include a method for licensed software use. Said computer-based method is found in the Accused Instrumentalities. For example, for Mediacom's STBs sold and/or leased by Mediacom, Mediacom conditions the benefit of the receipt of its products and services upon requiring the STBs to be authenticated when connected to a TV or computer for the first time (i.e. a computer-based method for accessing functionality) in accordance with the DOCSIS 3.0 and/or DOCSIS 3.1 protocol.

**ANSWER:** Denied.

173. Exemplary infringement analysis showing infringement of claim 1 of the '842 patent is set forth in Exhibit X (DOCSIS 3.0) and Exhibit Y (DOCSIS 3.1). This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '842 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '842 patent.

**ANSWER:** Denied.

174. The Accused Instrumentalities have infringed and continue to infringe at least claim 1 of the '842 patent during the pendency of the '842 patent.

**ANSWER:** Denied.

175.    Discovery is expected to uncover the full extent of Defendants' infringement of the '842 patent beyond the '842 Accused Instrumentalities already identified through public information.

**ANSWER:**    Denied.

176.    To the extent any step of any claimed method of the '842 patent is performed by a customer or partner of Defendants, Defendants are liable for such infringement. Defendants condition the receipt of the benefits of their cable, internet, and/or VOIP services on the customer or partner's performance of the claimed method step and/or the infringing use of hardware or software, as further disclosed in Exhibit X and Exhibit Y.

**ANSWER:**    Denied.

177.    On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:**    Denied.

178.    On information and belief, since Defendants have had knowledge of the '842 patent, Defendants have induced and continues to induce the infringement of others at least claim 1 of the '842 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '842 patent.

**ANSWER:**    Denied.

179.    In particular, Defendants' acts of inducement included, *inter alia*: providing the '842 Accused Instrumentalities to its customers and other third parties and intending them to use the '842 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/); providing online support, an online portal, and training customers to use the '842 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '842 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '842 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '842 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**    Denied.

180.    On information and belief, at least since Defendants have had knowledge of this patent, Defendants are liable as contributory infringers under 35 U.S.C. § 271(c). The Accused Instrumentalities are especially made or adapted for use in an infringement of this patent. The Accused Instrumentalities are a material component for use in practicing this patent, are specifically made in a way to enable its infringement, and are not a staple article of commerce suitable for substantial non-infringing use.

**ANSWER:**    Denied.

181.    On information and belief, since Defendants had knowledge of the '842 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**    Denied.

182.    Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**    Denied.

## COUNT VIII – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,739,295

183.    The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**    Mediacom incorporates herein its responses to the foregoing paragraphs.

184.    On May 27, 2014, the '295 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Secure Personal Content Server."

**ANSWER:**    Admitted that the '295 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

185.    Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '295 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**    Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

186.    On information and belief, Mediacom has directly infringed (by itself and jointly with its customers and partners) one or more claims of the '295 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically including but not limited to (1) Mediacom set-top boxes or TV boxes; and (2) services associated with the same, including but not limited to HD, digital television channels, and DVR services (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:**    Denied.

36

187. On information and belief, the Accused Instrumentalities infringed at least claim 13 of the '295 patent. The Accused Instrumentalities perform a method for using a local content server system ("LCS") comprising a LCS communications port, storage unit for storing digital data, and domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS. For example, Mediacom sells/offers for sale and/or leases the Accused Instrumentalities and conditioned the receipt of its products/and or services upon the Accused Instrumentalities including a TV Box or DVR (i.e. LCS), including a communications port, memory (i.e. storage unit for storing digital data) connecting via a network to Mediacom's authentication server.

**ANSWER:** Denied.

188. Exemplary infringement analysis showing infringement of claim 13 of the '295 patent is set forth in Exhibit Z. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '295 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '295 patent.

**ANSWER:** Denied.

189. The Accused Instrumentalities have infringed at least claim 13 of the '295 patent during the pendency of the '295 patent until at least August 4, 2020.

**ANSWER:** Denied.

190. Discovery is expected to uncover the full extent of Defendants' infringement of the '295 patent beyond the '295 Accused Instrumentalities already identified through public information.

**ANSWER:** Denied.

191. To the extent any step of any claimed method of the '295 patent was performed by a customer or partner of Defendants, Defendants are liable for such infringement. Defendants conditioned the receipt of the benefits of their cable, internet, and/or VOIP services on the customer or partner's performance of the claimed method step and/or the infringing use of hardware or software, as further disclosed in Exhibit Z.

**ANSWER:** Denied.

192. On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:** Denied.

193.    On information and belief, at least since Defendants have had knowledge of the '295 patent, Defendants' infringement has been willful.

**ANSWER:**    Denied.

194.    Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**    Denied.

### COUNT IX – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,475,246

195.    The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**    Mediacom incorporates herein its responses to the foregoing paragraphs.

196.    On January 6, 2009, the '246 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Secure Personal Content Server."

**ANSWER:**    Admitted that the '246 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

197.    Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '246 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**    Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

198.    On information and belief, Mediacom has and continues to directly infringe (by itself and jointly with its customers and partners) one or more claims of the '246 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically including but not limited to (1) Mediacom set-top boxes or TV boxes; and (2) services associated with the same, including but not limited to HD, digital television channels, and DVR services (for the purposes of this section, the "Accused Instrumentalities").

**ANSWER:**    Denied.

199.    On information and belief, the Accused Instrumentalities infringe at least claim 1 of the '246 patent. The Accused Instrumentalities perform a method for using a local content server system ("LCS") for creating a secure environment for digital content. For example, Mediacom sells/offers for sale and/or leases the Accused Instrumentalities. Mediacom also offers for sale and/or leases the Mediacom TV and DVR service for use with the Accused Instrumentalities, which also contain a secure environment for digital content.

**ANSWER:**    Denied.

200.     Exemplary infringement analysis showing infringement of claim 1 of the '246 patent is set forth in Exhibit AA. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '246 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '246 patent.

**ANSWER:**     Denied.

201.     The Accused Instrumentalities have infringed and continue to infringe at least claim 1 of the '246 patent during the pendency of the '246 patent.

**ANSWER:**     Denied.

202.     Discovery is expected to uncover the full extent of Defendants' infringement of the '246 patent beyond the '246 Accused Instrumentalities already identified through public information.

**ANSWER:**     Denied.

203.     On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:**     Denied.

204.     On information and belief, since Defendants have had knowledge of the '246 patent, Defendants have induced and continues to induce the infringement of others at least claim 1 of the '246 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '246 patent.

**ANSWER:**     Denied.

205.     In particular, Defendants' acts of inducement included, *inter alia*: providing the '246 Accused Instrumentalities to its customers and other third parties and intending them to use the '246 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/); providing online support, an online portal, and training customers to use the '246 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '246 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '246 Accused

Instrumentalities through press and news releases (*see, e.g.,*
https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to
infringe or promote the infringement of the '246 Accused Instrumentalities (*see, e.g.,*
https://mediacomcable.com/careers/).

**ANSWER:**  Denied.

206.    On information and belief, at least since Defendants have had knowledge of this
patent, Defendants are liable as contributory infringers under 35 U.S.C. § 271(c). The Accused
Instrumentalities are especially made or adapted for use in an infringement of this patent. The
Accused Instrumentalities are a material component for use in practicing this patent, are
specifically made in a way to enable its infringement, and are not a staple article of commerce
suitable for substantial non-infringing use.

**ANSWER:**  Denied.

207.    On information and belief, at least since Defendants have had knowledge of the
'246 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**  Denied.

208.    Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**  Denied.

## COUNT X – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 7,159,116 B2

209.    The allegations set forth in the foregoing paragraphs are hereby incorporated by
reference as if fully set forth herein.

**ANSWER:**  Mediacom incorporates herein its responses to the foregoing paragraphs.

210.    On January 2, 2007, the '116 patent was duly and legally issued by the United
States Patent and Trademark Office under the title "Systems, Methods and Devices for Trusted
Transactions."

**ANSWER:**  Admitted that the '116 patent was issued on the date and with the title set

forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

211.    Plaintiffs are the assignees and owners of the entire right, title and interest in and
to the '116 patent, including the right to assert all causes of action arising under said patent and
the right to any remedies for infringement of it.

**ANSWER:**  Mediacom presently lacks information sufficient to form a belief as to the

allegations of this paragraph, and therefore denies them.

212.   On information and belief, Mediacom has and continues to directly infringe (by itself and jointly with its customers and partners) one or more claims of the '116 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically one or more Mediacom applications ("Mediacom Apps") and servers supporting Mediacom Apps (for the purposes of this section, the "Accused Instrumentalities") which include, by way of example, the XtreamTV app. *See, e.g.,* http://mediacomcc.custhelp.com/app/answers/detail/a_id/3746/~/xtream-tv-app-%26-website.

   **ANSWER:**   Denied.

213.   On information and belief, the Accused Instrumentalities include a device for conducting a trusted transaction between at least two parties who agree to transact. For example, the multiple apps provided by Mediacom to its users or customers, including the Mediacom Apps, are maintained by Mediacom servers on which the Mediacom Apps' downloading and authentication services are hosted, which necessarily infringes at least claims 14 and 16-19 of the '116 patent.

   **ANSWER:**   Denied.

214.   Exemplary infringement analysis showing infringement of claims 14 and 16-19 of the '116 patent is set forth in Exhibit AB. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '116 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '116 patent.

   **ANSWER:**   Denied.

215.   The Accused Instrumentalities have infringed and continue to infringe at least of claims 14 and 16-19 of the '116 patent during the pendency of the '116 patent.

   **ANSWER:**   Denied.

216.   Discovery is expected to uncover the full extent of Defendants' infringement of the '116 patent beyond the '116 Accused Instrumentalities already identified through public information.

   **ANSWER:**   Denied.

217.   On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

   **ANSWER:**   Denied.

218.     On information and belief, since Defendants have had knowledge of the '116 patent, Defendants have induced and continues to induce the infringement of others at least of claims 14 and 16-19 of the '116 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least of claims 14 and 16-19 of the '116 patent.

**ANSWER:**     Denied.

219.     In particular, Defendants' acts of inducement included, *inter alia*: providing the '116 Accused Instrumentalities to its customers and other third parties and intending them to use the '116 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/); providing online support, an online portal, and training customers to use the '116 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '116 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '116 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to infringe or promote the infringement of the '116 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

**ANSWER:**     Denied.

220.     On information and belief, at least since Defendants have had knowledge of this patent, Defendants are liable as contributory infringers under 35 U.S.C. § 271(c). The Accused Instrumentalities are especially made or adapted for use in an infringement of this patent. The Accused Instrumentalities are a material component for use in practicing this patent, are specifically made in a way to enable its infringement, and are not a staple article of commerce suitable for substantial non-infringing use.

**ANSWER:**     Denied.

221.     On information and belief, at least since Defendants have had knowledge of the '116 patent, Defendants' infringement has been and continues to be willful.

**ANSWER:**     Denied.

222.     Blue Spike has been harmed by the Defendants' infringing activities.

**ANSWER:**     Denied.

<u>**COUNT XI – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,538,011**</u>

223.     The allegations set forth in the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

**ANSWER:**     Mediacom incorporates herein its responses to the foregoing paragraphs.

224.     On September 17, 2013, the '011 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Systems, Methods and Devices for Trusted Transactions."

**ANSWER:**     Admitted that the '011 patent was issued on the date and with the title set forth in this paragraph.  Mediacom denies any remaining allegations of this paragraph.

225.     Plaintiffs are the assignees and owners of the entire right, title and interest in and to the '011 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

**ANSWER:**     Mediacom presently lacks information sufficient to form a belief as to the allegations of this paragraph, and therefore denies them.

226.     On information and belief, Mediacom has and continues to directly infringe (by itself and jointly with its customers and partners) one or more claims of the '011 patent by selling, offering to sell, making, using, and/or providing and causing to be used products and services, specifically one or more Mediacom applications ("Mediacom Apps") and servers supporting Mediacom Apps (for the purposes of this section, the "Accused Instrumentalities") which include, by way of example, the XtreamTV app. *See, e.g.,* http://mediacomcc.custhelp.com/app/answers/detail/a_id/3746/~/xtream-tv-app-%26-website.

**ANSWER:**     Denied.

227.     On information and belief, the Accused Instrumentalities include a device for conducting a trusted transaction between at least two parties who agree to transact. For example, the multiple apps provided by Mediacom to its users or customers, including the Mediacom Apps, are maintained by Mediacom servers on which the Mediacom Apps' downloading and authentication services are hosted, which necessarily infringes at least claim 35 of the '011 patent.

**ANSWER:**     Denied.

228.     Exemplary infringement analysis showing infringement claim 35 of the '011 patent is set forth in Exhibit AC. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by Mediacom with respect to the '011 patent. Blue Spike reserves all rights to amend, supplement and modify this preliminary infringement

analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '011 patent.

**ANSWER:** Denied.

229. The Accused Instrumentalities have infringed and continue to infringe at least of claim 35 of the '011 patent during the pendency of the '011 patent.

**ANSWER:** Denied.

230. Discovery is expected to uncover the full extent of Defendants' infringement of the '011 patent beyond the '011 Accused Instrumentalities already identified through public information.

**ANSWER:** Denied.

231. On information and belief, Defendants have had notice of this patent and Defendants' infringement since at least the filing of the present Complaint. Additionally, on information and belief, Defendants have been aware of or willfully blind to the existence of this patent and its infringement thereof as a result of the widespread assertion of this patent in its industry through the Prior Litigation.

**ANSWER:** Denied.

232. On information and belief, since Defendants have had knowledge of the '011 patent, Defendants have induced and continues to induce the infringement of others at least of claim 35 of the '011 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting the infringement of others, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least of claim 35 of the '011 patent.

**ANSWER:** Denied.

233. In particular, Defendants' acts of inducement included, *inter alia*: providing the '011 Accused Instrumentalities to its customers and other third parties and intending them to use the '011 Accused Instrumentalities; providing information, advertising, and instructions for these products through its own and third-party websites (*see, e.g.,* https://mediacomcable.com/products/television/); providing potential customers with instructions on how to obtain these products (*see, e.g.,* https://mediacomcable.com/products/television/); providing online support, an online portal, and training customers to use the '011 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); providing a call/answer for support and training customers to use the '011 Accused Instrumentalities in an infringing way (*see, e.g.,* http://mediacomcc.custhelp.com/); advertising the '011 Accused Instrumentalities through press and news releases (*see, e.g.,* https://mediacomcable.com/about/news/); and advertising, hiring, and training employees to

infringe or promote the infringement of the '011 Accused Instrumentalities (*see, e.g.,* https://mediacomcable.com/careers/).

> **ANSWER:** Denied.

234. On information and belief, at least since Defendants have had knowledge of this patent, Defendants are liable as contributory infringers under 35 U.S.C. § 271(c). The Accused Instrumentalities are especially made or adapted for use in an infringement of this patent. The Accused Instrumentalities are a material component for use in practicing this patent, are specifically made in a way to enable its infringement, and are not a staple article of commerce suitable for substantial non-infringing use.

> **ANSWER:** Denied.

235. On information and belief, at least since Defendants have had knowledge of the '011 patent, Defendants' infringement has been and continues to be willful.

> **ANSWER:** Denied.

236. Blue Spike has been harmed by the Defendants' infringing activities.

> **ANSWER:** Denied.

* * *

### PLAINTIFFS' PRAYER FOR RELIEF

Mediacom denies that Plaintiffs are entitled to any of the relief they seek.

* * *

### DEFENSES

Mediacom asserts the following defenses in response to Plaintiffs' allegations,

undertaking the burden of proof only as to those defenses deemed affirmative defenses by law,

regardless of how such defenses are denominated herein. In addition to the defenses described

below, Mediacom specifically reserves all rights to allege additional defenses that become

known through the course of discovery.

### FIRST DEFENSE: NON-INFRINGEMENT

Mediacom does not make, use, sell, offer for sale, or import into the United States, and

has not made, used, sold, offered for sale or imported into the United States any products or

45

services that infringe any valid and enforceable claim of the Patents-in-Suit willfully, directly, indirectly, through the doctrine of equivalents, or otherwise.

### SECOND DEFENSE: INVALIDITY AND UNENFORCEABILITY

The claims of the Patent-in-Suit are invalid and/or unenforceable for failure to meet the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 100 et seq., 101, 102, 103, 112, the requirements of the Code of Federal Regulations, as well as the general principles of patent law.

### THIRD DEFENSE: FAILURE TO STATE A CLAIM

Plaintiffs fail to state a claim upon which relief can be granted.

### FOURTH DEFENSE: FAILURE TO MARK

Upon information and belief, Plaintiffs and any predecessors in interest to the Patents-in-Suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise to give proper notice that Mediacom's actions allegedly infringe the Patents-in-Suit, and Mediacom is not liable to Plaintiffs for the acts alleged to have been performed before Mediacom received actual notice that they were allegedly infringing the Patents-in-Suit. Any claim for damages for patent infringement is limited by 35 U.S.C. § 287 to those damages occurring after the notice of infringement.

### FIFTH DEFENSE: PROSECUTION HISTORY ESTOPPEL

By reason of statements, representations, concessions, admissions, arguments, and/or amendments, whether explicit or implicit, made by or on behalf of the applicant during the prosecution of the patent applications that led to the issuance of the Patents-in-Suit, Plaintiffs' claims of patent infringement are barred in whole or in part by the doctrine of prosecution history estoppel.

## SIXTH DEFENSE: UNCLEAN HANDS

Plaintiffs' claims against Mediacom are barred under the doctrine of unclean hands.

## SEVENTH DEFENSE: EQUITABLE ESTOPPEL

Plaintiffs' claims against Mediacom are barred, in whole or in part, by the doctrine of equitable estoppel.

## EIGHTH DEFENSE: IMPLIED LICENSE

Plaintiffs' claims are barred, in whole or in part, by express or implied license, and/or the patent exhaustion doctrine.

## NINTH DEFENSE: RESERVATION

Mediacom reserves all affirmative defenses available under Rule 8(c) of the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that may be available now or may become available in the future based on discovery or any other factual investigation in this case, including inequitable conduct defenses.

\* \* \*

## COUNTERCLAIMS

Mediacom Communications Corp. and Mediacom Broadband LLC (collectively, "Mediacom") hereby counterclaim against Plaintiffs as follows:

1.      Plaintiffs assert claims of patent infringement that are wholly without merit.  The decisions in Plaintiffs' other litigations and the filings therein demonstrate that all of the asserted claims are both invalid and not infringed.

2.      In fact, Plaintiffs have asserted the Patents-in-Suit in a multitude of litigations and have failed to attain *any* favorable final judgment.

47

3.     To the contrary, several courts have found the Patents-in-Suit, along with Plaintiffs' litigation conduct, devoid of merit.  *Blue Spike v. Charter*, No. 19-158 (D. Del. Dec. 18, 2019) (Memorandum Order at 7) ("It also seems to me that there is a preemption problem if I said that this patent claim survives Section 101."); *see also Blue Spike v. Comcast Cable Commc'ns*, No. 19-159 (D. Del. Sept. 6, 2019) (Report and Recommendation at 4 n.4) ("The Court pauses at the outset to note what it will further underscore herein:  that Plaintiffs' answering brief was particularly unhelpful.  Plaintiffs could have used that brief to clearly and directly answer the criticisms raised by Defendant's opening brief, and to point out precisely why the Complaint had in fact adequately pleaded that the accused instrumentalities read on certain challenged claim limitations.  But for whatever reason, Plaintiffs did not do so.  Instead, Plaintiffs' answering brief contained almost no substance at all on these fronts."); *Blue Spike v. Adobe Sys.*, No. 14-1647 (N.D. Cal. May 4, 2015) (Order on Motion for Voluntary Dismissal Without Prejudice; Order to Show Cause at 1 n.1) ("The plaintiff's reply brief was not properly before the Court, one example of the plaintiff's disregard for local rules"); *id.* at 4 ("[T]he plaintiff's conduct in connection with this case has been the antithesis of diligent").

4.     Despite these prior decisions, Plaintiffs pursued its baseless claims. Accordingly, this case is clearly exceptional and Mediacom intends to pursue a claim for its fees under 35 U.S.C. § 285.

**Jurisdiction and Venue**

5.     Plaintiffs have filed a Complaint against Mediacom seeking, *inter alia*, a judgment that Mediacom has infringed claims of U.S. Patent Nos. RE44,222 ("the '222

patent); RE44,307 ("the '307 patent"); 8,473,746 ("the '746 patent"); 8,224,705 ("the '705 patent"); 7,287,275 ("the '275 patent"); 9,021,602 ("the '602 patent"); 9,104,842 ("the '842 patent"); 8,739,295 ("the '295 patent"); 7,475,246 ("the '246 patent"); 7,159,116 ("the '116 patent"); and 8,538,011 ("the '011 patent") (collectively "the Patents-in-Suit"). As a result of the filing of the Complaint, an immediate and justiciable controversy exists between Plaintiffs and Mediacom regarding the alleged infringement and validity of the Patents-in-Suit.

6. The following Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

7. Subject matter jurisdiction in this Court is proper under, *inter alia*, 28 U.S.C. §§ 1331 and 1338.

8. Mediacom Communications Corp. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in New York.

9. Mediacom Broadband LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business in New York.

10. On information and belief, Plaintiff Blue Spike LLC is a limited liability company organized under the laws of the State of Texas.

11. On information and belief, Plaintiff Blue Spike International is a company established in Ireland with a place of business at Bond House, 9/10 Bridge Street Lower, Dublin 8.

12.     On information and belief, Plaintiff Wistaria Trading Ltd. is a Bermuda corporation.

13.     This Court has personal jurisdiction over Plaintiffs because, *inter alia*, Plaintiffs have submitted to the jurisdiction of this Court by filing their Complaint with this Court.

14.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400, and because, *inter alia*, Plaintiffs have submitted to the jurisdiction of this Court and selected this venue by filing their Complaint with this Court.

**The Patents-in-Suit**

15.     As discussed below, the Patents-in-Suit purport to address various data security problems, but fail to disclose any actual solutions.  Instead, the Patents-in-Suit wishfully seek to cover patent-ineligible abstract ideas and well-known technologies. Stemming from a purported inventor with a business education and no formal training in any relevant field (*see* Blue Spike Management, http://www.bluespike.com/company/management/, *last visited* February 24, 2021 (biography of Scott Moskowitz)), the Patents-in-Suit do not properly claim the technologies that Plaintiffs now seek to ensnare within their patents.

16.     Instead, the Patents-in-Suit claim a generalized approach that contributes nothing to the public knowledge, but seek to unfairly and improperly monopolize an entire technology area.  The Patents-in-Suit, thus, fail the fundamental requirements of validity, including under 35 U.S.C. §§ 101 and 112.  Further, as explained below the Patents-in-Suit are also invalid under 35 U.S.C. §§ 102 and 103 based on prior art of record in several of the prior litigations.

17.     Plaintiffs' continued attempts to extract a large nuisance settlement by asserting a multitude of otherwise baseless claims is transparent.  Plaintiffs generally wilt when any significant challenge is posed to its claims, further confirming the baseless nature of its claims.  As set forth below, each of the Patents-in-Suit is invalid and not infringed by Mediacom.

**Count One**
**(Declaration of Non-Infringement of the '222 patent)**

18.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

19.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '222 patent.

20.     For example, Plaintiffs cannot show that Mediacom employs a "packet watermark" that is "cryptographically associated with the contents of the packet itself." (10:23-29.)

21.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '222 patent.

**Count Two**
**(Declaration of Invalidity of the '222 patent)**

22.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

23.    The claims of the '222 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

24.    For example, the Packet Transfer Patents (*i.e.*, the '222, '307, '705, '746, and '275 patents) merely recite an abstract idea with no inventive application and, thus, are invalid under Section 101.  In prior litigation in the District of Delaware, the court found that the '275 patent was directed to the abstract idea of "watermarking data packets to authenticate them."  *Blue Spike v. Charter*, No. 19-158 (D. Del. Dec. 18, 2019) (Memorandum Order at 7).  The court found "a preemption problem if I said that this patent claim survives Section 101" because the '275 claim "essentially seems to consist of breaking data into packets and marking at least one of those packets."  (*Id.*)  The court then requested briefing as to whether its ruling should extend to the other asserted claims of the '275 patent and the other Packet Transfer Patents, but Plaintiffs promptly settled the case.

25.    Furthermore, even if the Packet Transfer Patents did claim anything beyond an abstract idea, they would cover subject matter that the purported inventor, Mr. Moskowitz, did not invent.  For example, the claims recite use of a "packet watermark," which the patents describe as a watermark that is "cryptographically associated with the contents of the packet itself."  ('275 pat. at 10:18-40.)  The Packet Transfer Patents disclose no such watermark.

26.    Mediacom is entitled to a declaration that the claims of the '222 patent are invalid.

**Count Three**
**(Declaration of Non-Infringement of the '307 patent)**

27.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

28.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '307 patent.

29.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '307 patent.

**Count Four**
**(Declaration of Invalidity of the '307 patent)**

30.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

31.     The claims of the '307 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

32.     Mediacom is entitled to a declaration that the claims of the '307 patent are invalid.

**Count Five**
**(Declaration of Non-Infringement of the '746 patent)**

33.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

34.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '746 patent.

35.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '746 patent.

**Count Six**
**(Declaration of Invalidity of the '746 patent)**

36.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

37.     The claims of the '746 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

38.     Mediacom is entitled to a declaration that the claims of the '746 patent are invalid.

**Count Seven**
**(Declaration of Non-Infringement of the '705 patent)**

39.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

40.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '705 patent.

41.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '705 patent.

**Count Eight**
**(Declaration of Invalidity of the '705 patent)**

42.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

43.     The claims of the '705 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

44.     Mediacom is entitled to a declaration that the claims of the '705 patent are invalid.

**Count Nine**
**(Declaration of Non-Infringement of the '275 patent)**

45.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

46.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '275 patent.

47.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '275 patent.

**Count Ten**
**(Declaration of Invalidity of the '275 patent)**

48.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

49.     The claims of the '275 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

50.     Mediacom is entitled to a declaration that the claims of the '275 patent are invalid.

**Count Eleven**
**(Declaration of Non-Infringement of the '602 patent)**

51.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

52.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '602 patent.

53.     For example, Plaintiffs cannot show that the accused software (to the extent that can be ascertained from Plaintiffs' Complaint) uses a functional watermark / key with "executable object code."

54.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '602 patent.

## Count Twelve
### (Declaration of Invalidity of the '602 patent)

55.     Mediacom re-alleges herein each of the foregoing paragraphs of its

Counterclaims.

56.     The claims of the '602 patent are invalid for failure to comply with the

requirements of the patent laws of the United States, including, without limitation, 35

U.S.C. §§ 101, 102, 103, and/or 112.

57.     For example, in prior litigation, the accused infringer asserted that the

Watermarking Patents (the '602 and '842 patents) were invalid under Section 101 for

reciting the abstract idea of "requiring a key to access the software application."

Plaintiffs responded that the patents provide "a counterintuitive solution to the copying

problem," but the district court observed that "what Defendant is arguing, and I think it is

a good argument, is we're not clear on where any of [the] purported inventive concept is

captured in the claims." *Blue Spike v. Charter*, No. 19-158 (D. Del. Dec. 18, 2019)

(Memorandum Order at 6). The court believed the litigation should proceed further

before the Section 101 invalidity challenge could be resolved; Plaintiffs subsequently

settled the case.

58.     Even setting aside invalidity under Section 101, the claims of the

Watermarking Patents would be invalid under Sections 102/103. For example, the

Watermarking Patents were the subject of *inter partes* review petitions that set forth the

invalidity of the patents in light of certain prior art teaching, among other things, systems

for protecting software through codes (U.S. Pat. Nos. 5,757,907; 5,199,066; and

5,103,476). IPR Nos. 2019-01447; 2019-01449. Plaintiffs settled with the petitioner

before the Patent Trial & Appeal Board ruled on the petitions.

59.     Moreover, the Watermarking Patents are invalid under Section 112.  The patents were allowed to issue because the claims recite a functional watermark / key based on user information.  (*See* '842 patent file history, 6/7/15 Notice of Allowance ("The primary reason for allowance of the claims is the limitation of querying for personalization information during the installation of the watermarked software and accessing the watermark using a key which is determined from the personalization information.  The watermark containing executable object code which is accessible using the key represent an improvement over the prior art that uses purely informational watermarks.").)  The Watermarking Patents fail to describe such a watermark and key, let alone teach how to make and use them.

60.     Mediacom is entitled to a declaration that the claims of the '602 patent are invalid.

## Count Thirteen
### (Declaration of Non-Infringement of the '842 patent)

61.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

62.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '842 patent.

63.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '842 patent.

## Count Fourteen
### (Declaration of Invalidity of the '842 patent)

64.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

65.     The claims of the '842 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

66.     Mediacom is entitled to a declaration that the claims of the '842 patent are invalid.

## Count Fifteen
### (Declaration of Non-Infringement of the '295 patent)

67.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

68.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '295 patent.

69.     For example, Plaintiffs cannot show that the accused device (to the extent that can be ascertained from Plaintiffs' Complaint) employs a domain processor that determines data set status values of unsecure, secure, or legacy.

70.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '295 patent.

**Count Sixteen**
**(Declaration of Invalidity of the '295 patent)**

71.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

72.     The claims of the '295 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

73.     For example, the Secure Server Patents (the '295 and '246 patents) are invalid under Sections 102/103.  Indeed, the patents were the subject of *inter partes* review petitions that set forth the invalidity of the patents in light of a wealth of prior art teaching, among other things, digital rights management and the provision of different versions of content based on user permissions (U.S. Patent Nos. 6,668,246; 6,950,941; 6,226,618; 6,311,214; 6,345,100).  IPR Nos. 2019-01357, 2019-01358, 2019-01303.  Plaintiffs settled with the petitioner before the Patent Trial & Appeal Board ruled on the petitions.

74.     The Secure Server patent claims are also invalid under Section 112.  For example, the claims recite a "domain processor" that determines the nature of media content as either unsecured, secured, or legacy.  The Secure Server Patents fail to describe how this determination is made.

75.     Mediacom is entitled to a declaration that the claims of the '295 patent are invalid.

60

**Count Seventeen**
**(Declaration of Non-Infringement of the '246 patent)**

76.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

77.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '246 patent.

78.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '246 patent.

**Count Eighteen**
**(Declaration of Invalidity of the '246 patent)**

79.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

80.     The claims of the '246 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

81.     Mediacom is entitled to a declaration that the claims of the '246 patent are invalid.

**Count Nineteen**
**(Declaration of Non-Infringement of the '116 patent)**

82.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

83.    Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '116 patent.

84.    For example, Plaintiffs cannot show that the accused device (to the extent it can be ascertained from Plaintiffs' Complaint) employs the claimed "steganographic cipher."

85.    Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '116 patent.

**Count Twenty**
**(Declaration of Invalidity of the '116 patent)**

86.    Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

87.    The claims of the '116 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

88.    For example, the Trusted Transaction Patents (the '116 and '011 patents) are invalid under Section 101.  The claims seek to broadly cover the abstract idea of a "trusted transaction" based on information relating to the parties to the transaction.

89.    Even setting aside Section 101, the Trusted Transaction patents would still be invalid under, for example, Section 112.  The patents recite a "steganographic cipher" that purportedly "uses a key and a message to hide data in a signal in a manner such that the existence of the message cannot be detected without the key."  ('011 pat. file history,

2/8/11 Response to Office Action.)  However, the patents neither describe this cipher nor how to make / use the cipher.

90.     Mediacom is entitled to a declaration that the claims of the '116 patent are invalid.

## Count Twenty-One
## (Declaration of Non-Infringement of the '011 patent)

91.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

92.     Mediacom has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '011 patent.

93.     Mediacom is entitled to a declaration that it has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '011 patent.

## Count Twenty-Two
## (Declaration of Invalidity of the '011 patent)

94.     Mediacom re-alleges herein each of the foregoing paragraphs of its Counterclaims.

95.     The claims of the '011 patent are invalid for failure to comply with the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

96.     Mediacom is entitled to a declaration that the claims of the '011 patent are invalid.

**Count Twenty-Three**
**(Exceptional case under 35 U.S.C. 285)**

97.     Mediacom re-alleges herein each of the foregoing paragraphs of its

Counterclaims.

98.     As described above, Plaintiffs cannot show that the accused devices and

services (to the extent they can be ascertained from Plaintiffs' Complaint) infringe any

asserted claim.

99.     Furthermore, the asserted claims are invalid, and Plaintiffs were aware of

the invalidity prior to filing this suit.  For example, a claim of the '275 patent has been

previously found to be invalid under Section 101, and Plaintiffs are aware that the

reasoning of the ruling applies to the other claims of the '275 patent as well as the other

Packet Transfer Patents.  In addition, the invalidity of the Watermarking Patents and the

Secure Server Patents was set forth in *inter partes* review petitions.  On information and

belief, Plaintiffs settled these proceedings to avoid formal invalidation of its patents.

100.    In light of at least the non-infringement and invalidity issues set forth

above, this is an exceptional case.

101.    Mediacom is entitled to an award of its attorneys' fees.


\* \* \*

## PRAYER FOR RELIEF

WHEREFORE, Mediacom respectfully requests that this Court enter judgment in its

favor against Plaintiffs and grant the following relief:

A.     Judgment denying all relief sought by Plaintiffs in their Complaint;

B.     Judgment dismissing Plaintiffs' Complaint with prejudice;

C. Judgment that Mediacom does not infringe any claim of the

Patents-in-Suit, either directly or indirectly, literally or under the doctrine of equivalents;

D. Judgment that the asserted claims of the Patents-in-Suit are invalid;

E. an award of Mediacom's attorney's fees, costs, and expenses

pursuant to 35 U.S.C. § 285; and

F. that the Court may grant Mediacom such other and further relief as

it may deem just and proper.

## JURY DEMAND

Mediacom demands a trial by jury on all issues triable to a jury.


Dated: February 25, 2021                    Respectfully submitted,

                                            /s/ Amr. O. Aly
                                            Amr O. Aly
                                            JENNER & BLOCK LLP
                                            919 Third Avenue
                                            New York, NY 10022-3908
                                            Telephone: (212) 407-1774
                                            AAly@jenner.com

                                            Benjamin J. Bradford
                                            Yusuf Esat
                                            JENNER & BLOCK LLP
                                            353 North Clark St.
                                            Chicago, IL 60654
                                            bbradford@jenner.com
                                            yesat@jenner.com

                                            *Attorneys for Defendants Mediacom*
                                            *Communications Corporation and Mediacom*
                                            *Broadband LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Yusuf Esat, an attorney at the law firm of Jenner & Block LLP, certify that on February 25, 2021, the foregoing **MEDIACOM'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT AND COUNTERCLAIMS** was electronically served on counsel of record via ECF.

*/s/ Yusuf Esat*
Yusuf Esat
